UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL BOYINGTON,

          Petitioner,

vs.                                  Case No. 3:18-cv-810-BJD-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

          Respondents.

_____

## **ORDER**

## I.  INTRODUCTION

      Through counsel, Petitioner Michael Boyington filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Petition) (Doc. 1).   Petitioner challenges his state court (Suwannee County) conviction for attempted murder in the second degree with a firearm and aggravated assault with a firearm. He filed Exhibits (Doc. 3).   Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 14).[1]   Petitioner filed a notice that he did

---

[1] Respondents filed an Appendix (Doc. 14).   In this opinion, the Court references the page numbers assigned by the electronic filing system.

not intend to file a reply (Doc. 16).   See Order (Doc. 4).   Respondents calculate the Petition is timely.   Response at 6-7.

## II.   EVIDENTIARY HEARING

"In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing."   Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).   To be entitled to an evidentiary hearing, the petitioner must allege "facts that, if true, would entitle him to relief."   Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020). See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need), cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing.   Martin, 949 F.3d at 670 (quotation and citation omitted).   In this case, the pertinent facts are fully developed in this record or

the record otherwise precludes habeas relief;[2] therefore, the Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).   Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).

## III.   HABEAS REVIEW

Petitioner raises six grounds for habeas relief.   In a federal habeas proceeding, a reviewing court asks whether the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2241(c)(3).   The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus and "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court." <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 520 (2020) (per curiam).   <u>See</u> 28 U.S.C. § 2254; <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating

---

2 Petitioner was represented by counsel in the state-court post-conviction proceeding, and the state court conducted an evidentiary hearing.

issues previously decided in state court), <u>petition for cert. filed</u>, (U.S. Nov. 6, 2020); <u>Shoop v. Hill</u>, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

The Eleventh Circuit describes this framework:

> [federal courts] are prohibited from granting a state prisoner's habeas corpus petition unless the relevant state court decision on the merits of the petitioner's claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

<u>James v. Warden, Holman Corr. Facility</u>, 957 F.3d 1184, 1190 (11th Cir. 2020) (quoting 28 U.S.C. § 2254(d)(1)-(2)), <u>petition for cert. filed</u>, (U.S. Nov. 18, 2020).

The high hurdle described above is not easily surmounted:

> A decision is "contrary to" clearly established federal law if the state court applied a rule that contradicts governing Supreme Court precedent, or if it reached a different conclusion than the Supreme Court did in a case involving materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if the court identifies the correct legal principle but applies it unreasonably to the facts before it. <u>Id</u>. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but

> whether that determination was unreasonable – a
> substantially higher threshold." <u>Schriro v.
> Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 167 L.Ed.2d
> 836 (2007).

<u>James</u>, 957 F.3d at 1190-91.   Indeed, if the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" <u>Kayer</u>, 141 S. Ct. at 520 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).

A state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." <u>Sealey</u>, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.   <u>Brannan v. GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), <u>cert. denied</u>, 573 U.S. 906 (2014).   Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." <u>Dallas v. Warden</u>, 964

F.3d 1285, 1302 (11th Cir. 2020) (quoting <u>Brumfield v. Cain</u>, 576 U.S. 305, 314 (2015)).   As such, a federal district court may not supersede a state trial court's determination simply because reasonable minds may disagree about the finding.   <u>Id</u>. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises several grounds claiming the ineffective assistance of trial counsel.   Claims of ineffective assistance of counsel are "governed by the familiar two-part <u>Strickland</u>[v. Washington, 466 U.S. 668 (1984)] standard."   <u>Knight v. Fla. Dep't of Corr.</u>, 958 F.3d 1035, 1038 (11th Cir. 2020), <u>petition for cert. filed</u>, (U.S. Jan. 7, 2021).   Petitioner must make the familiar two-pronged showing:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to

> deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). Because the petitioner must make the required showing on both prongs of the <u>Strickland</u> test, a court may conduct its inquiry in any order and need not address both components of the test if the petitioner's showing falls short on either one. <u>Id</u>. at 697, 104 S. Ct. 2052. In particular, where it is easier to avoid assessing counsel's performance and resolve the petitioner's claim on the ground that he has not made a sufficient showing of prejudice, courts are encouraged to do so. <u>Id</u>.

<u>Lee v. GDCP Warden</u>, No. 19-11466, 2021 WL 507897, at *9 (11th Cir. Feb. 11, 2021).

The Eleventh Circuit warns:

> because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so. <u>Harrington [v. Richter</u>, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted). Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id</u>.

<u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020) <u>petition for cert. filed</u>, (U.S. Feb. 11, 2021).

## V.   GROUND ONE

In the first ground of the Petition, Petitioner claims his trial counsel was ineffective for failure to seek immunity from prosecution under Florida's Stand Your Ground law. Petition at 14. Yes, Petitioner exhausted this ground by presenting it in his Verified Amended Rule 3.850 motion in sub-claim 1B.

7

(Doc. 14-7 at 213-15).[3]   Petitioner argued his counsel should have raised the issue pre-trial, bearing the burden of proving entitlement to the immunity by only a preponderance of the evidence, relying on Hair v. State, 17 So. 3d 804, 850 (Fla. 1st DCA 2009) (per curiam).   (Doc. 14-7 at 213-14).   Petitioner asserted his counsel's failure to pursue this claim to immunity pre-trial was patently unreasonable.   Id. at 214.

Relying on the Strickland two-pronged standard, the trial court denied the Rule 3.850 motion.   (Doc. 14-8 at 96-97).   On May 2, 2018, the 1st DCA affirmed per curiam.   (Doc. 14-10 at 163-64).   The mandate issued on May 23, 2018.   Id. at 166.   As the trial court properly applied the two-pronged Strickland standard of review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected Petitioner's claim based on Strickland.

Of import, the trial court found Petitioner failed to satisfy the performance prong of Strickland.   In denying post-conviction relief, the court noted that defense counsel was aware of the Stand Your Ground immunity statute.   (Doc. 14-8 at 100).   The court also concluded that counsel not only understood the law and its burdens, he made a sound strategic decision not to

---

3 Post-conviction counsel advised the trial court that the Defendant's Verified Amended Motion for Post-Conviction Relief would be the operative motion for the evidentiary hearing (Doc. 14-8 at 95-96), and the court treated it as such.   This Court will follow suit.

pursue the Stand Your Ground immunity claim pre-trial.   Id. at 101.   As such, the court found Petitioner's claim for relief without merit.   Id.

The post-conviction state court evidentiary hearing demonstrates the following.   Petitioner's trial counsel, Baya Harrison, is a very experienced criminal defense lawyer and was considered to be experienced counsel at the time of Petitioner's trial.   (Doc. 14-8 at 166-67).   "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."   Hardwick v. Benton, 318 F. App'x 844, 846 n.2 (11th Cir. 2009) (per curiam) (quoting Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir.2000)).   Here, the trial court found Petitioner failed to overcome the presumption of effective performance accorded to his counsel.

Indeed, the record shows defense counsel understood the law.   He knew the burden of proving immunity "is by a preponderance of the evidence."   (Doc. 14-8 at 196).   He also recognized that in order to obtain immunity, as a practical matter, counsel would need to show that the defendant had the right to use deadly force.   Id. at 196-97.   He also understood, as a logistical matter, if the defendant lost the claim to immunity, it would have serious consequences because the state was going to have the defendant's testimony from the pre-trial proceeding to use against the defendant at trial because defense counsel

would need to call the defendant at the pre-trial proceeding to prove up the claim of immunity.   <u>Id</u>. at 197-98.

Petitioner claims his counsel was ill-advised about the law and did not understand that the state had to prove, by clear and convincing evidence, that Petitioner was not entitled to immunity after Petitioner established a prima facie claim of immunity.   Petition at 18.   Simply, that was not the case at the time of Petitioner's trial in 2008, as the law placed the burden on the defendant to show entitlement to immunity by a preponderance of the evidence. <u>Peterson v. State</u>, 983 So. 2d 27, 29 (Fla. 1st DCA 2008).   It was not until June 9, 2017, that the law became effective placing the burden on the state to prove by clear and convincing evidence "to overcome the immunity from criminal prosecution[.]"   Fla. Stat. § 776.032(4) (2017), enacted by Chapter 2017-72, Laws of Florida.   Since any immunity hearing for Petitioner's trial would have taken place long before the statute's effective date, the provision would have been inapplicable to Petitioner's case.   <u>Love v. State</u>, 286 So. 3d 177, 180 (Fla. 2019) (finding the statute applicable to immunity hearings taking place on or after the effective date).

The trial court, in denying the Rule 3.850 motion, thoroughly explained why it rejected this claim for post-conviction relief, stating the court had reviewed and analyzed the claim and found trial counsel's explanation for

making his decision not to raise the Stand Your Ground immunity claim prior to trial "a sound strategic decision and therefore not ineffective assistance of counsel." (Doc. 14-8 at 101). Respondents argue that competent substantial evidence supported counsel's decision not to move to dismiss under Fla. Stat. § 776.032. Response at 28. This Court agrees. When counsel made a strategic decision not to raise the Stand Your Ground immunity issue prior to trial, he based it on the state of the law at the relevant time, and he knew and understood the Stand Your Ground law and made a strategic decision not to raise the matter pre-trial. See Edwards v. Marshall, No. 7:17-cv-00571-ACA-JHE, 2019 WL 4408447, at *7 (N.D. Ala. Apr. 23, 2019) (not reported in F. Supp.) (acknowledging the strategic decision of counsel not to raise Stand Your Ground immunity prior to trial, and finding the state court's conclusion that counsel was not ineffective "was neither an unreasonable application of nor contrary to Strickland"), report and recommendation adopted by 2019 WL 3229379 (N.D. Ala. July 18, 2019). A decision to not lodge a stand-your-ground challenge pre-trial is "the kind of reasonable strategic decision that cannot be attacked through a collateral claim of ineffectiveness." Edwards v. A.G., Ala., No. 19-13739-G, 2020 WL 1540405, at *3 (11th Cir. 2020) (citing Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010)).

The Court finds the state court's determination is consistent with federal precedent.   The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In short, the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   Therefore, the state court's decision is entitled to deference and ground one is due to be denied.

## VI.   GROUNDS TWO AND FOUR

In his second ground, Petitioner claims he was deprived of a fundamentally fair trial due to prosecutorial misconduct.   Petition at 21. Petitioner asserts the prosecutor violated the exclusionary rule when he repeatedly, knowingly, deliberately, and successfully disobeyed previous court holdings during the course of the trial.   <u>Id</u>. at 24.   In ground four of the Petition, Petitioner raises a claim of ineffective assistance of counsel for failure to move for a mistrial based upon various instances of prosecutorial misconduct, pointing to Williams Rule evidence. [4]   Petition at 26-27.

---

[4] <u>Williams v. State.</u>, 110 So. 2d 654 (Fla. 1959), <u>cert. denied</u>, 361 U.S. 847 (1959).

Petitioner contends that the prosecutors' actions deprived him of a fair and impartial trial in violation of his due process rights.   <u>Id</u>. at 28.

The trial court record demonstrates, pre-trial, the state filed a Notice of Intent to Offer Evidence of Other Crimes, Wrongs or Acts (Doc. 14-1 at 98-99). The evidence concerned an incident which took place in Escambia County, Florida, on September 7, 1997, which resulted in Petitioner being shot by a police officer.   <u>Id</u>.   Although Petitioner was charged with aggravated assault on a law enforcement officer with a firearm for pointing his gun at the officer, the grand jury issued a no true bill.   <u>Id</u>. at 101.   Defense counsel filed a Motion in Limine RE. Alleged Williams Rule Evidence and Request for Evidentiary Hearing (Doc. 14-1 at 100-102).   The trial court conducted a Williams Rule hearing.   <u>Id</u>. at 113.   The hearing transcript is part of the record.   (Doc. 14-4 at 308-81).   At a status conference on October 23, 2007, defense counsel announced that the state decided not to proceed with Williams Rule evidence.   <u>Id</u>. at 390.   The prosecutor confirmed that he would not proceed with the Williams Rule evidence.   <u>Id</u>.   The trial court asked if no ruling was needed on the evidentiary proceeding, and defense counsel confirmed that was a correct assessment as the state had decided to proceed without the Williams Rule evidence.   <u>Id</u>. at 391.

Petitioner asserts that, at trial, during cross-examination, the prosecutor improperly questioned Petitioner three times concerning the Escambia County incident.   The first question at issue is:   "You just said you know how Mr. Balint [the victim] feels getting shot.   How do you know how he feels by getting shot?"   (Doc. 14-3 at 167).   Defense counsel objected and argued to the court that the state was trying to get in Williams Rule evidence by asking Petitioner about the incident which took place in Pensacola, Florida.   Id. at 167-68.   The court said defense counsel did not open the door to Williams Rule evidence and for the prosecutor to be cautious.   Id. at 169-69.   The prosecutor tried to spin the matter, claiming he was addressing Petitioner's truthfulness about his prior record, and the court reminded the prosecutor that prior record means conviction.   Id. at 169.   The prosecutor went back to this line of questioning and asked how Petitioner knew how the victim felt, and once again defense counsel objected and said the prosecutor was inviting error.   Id. at 170-71.   The court sustained the objection and told the prosecutor to move on, reminding the prosecutor that the court had already ruled.   Id. at 171.   The prosecutor asked to approach and again argued that the defense opened the door.   Id.   The court said this had already been discussed, "and we've already agreed we would not bring out, so once you start getting into a prior bad act by cross-examination only on the fact he understands how the victim feels, that's

14

reversible error and we don't need to go there at this stage in the game, so the objection is sustained.   You need to move on."   Id. at 172.

Finally, the prosecutor inquired:   "You're claiming you're a victim. Who shot you?"   Id. at 172.   Defense counsel objected and the court sustained the objection.   Id.

In his Petition, Petitioner claims the prosecutor violated Petitioner's due process rights through this line of questioning.   Petition at 27-88.   Petitioner further asserts that the prosecutor's behavior warranted a mistrial, and counsel's failure to move for a mistrial constituted ineffective assistance of counsel.   Id. at 31.

The record shows Petitioner presented the claim of ineffective assistance of counsel in sub-claim 1D of his post-conviction motion, and, after an evidentiary hearing, the trial court denied relief.   (Doc. 14-8 at 104-106).   The 1st DCA affirmed.   (Doc. 14-10 at 163).

At the evidentiary hearing, defense counsel explained why he filed a motion in limine concerning the Williams Rule evidence.   He testified:

> I was advised by Mr. San Filipo [sic] (the prosecutor) of two incidences that had occurred that would constitute Williams Rule evidence.   There was a situation over in Pensacola where Mr. Boyington had allegedly gotten drunk, been walking around his neighborhood threatening people with a firearm.   A law enforcement officer came out to his house, the law

enforcement officer was in uniform, had his lights on, taking all kinds of precautions. Mr. Boyington had gone out the back door, when the officer knocked, came around the side with his rifle, pointed it at the law enforcement officer, whereupon the law enforcement officer shot Mr. Boyington. Mr. San Filipo [sic] gave me notice that he intended to introduce that evidence, that specific evidence, as <u>Williams Rule</u>.

There was a second incident, Mr. Boyington allegedly was in the neighborhood where this situation occurred. He was intoxicated, he was harassing his neighbors, threatening to kill them, threatening to kill their animals, and getting generally this group upset. Mr. San Filipo [sic] advised that he intended to present that evidence. So I did the research, got the facts together, filed motions in limine with regard to those instances.

And to clarify what happened, we did have the beginnings, as I recall, of a hearing, an evidentiary hearing, and then Mr. San Filipo [sic] conceded that this was not legitimate <u>Williams Rule</u>. And so there was a gentleman [sic] understanding that the State would not introduce the specific instances that I have described.

(Doc. 14-8 at 170-71).

Thus, the two motions in limine were resolved in defense counsel's favor.

<u>Id</u>. at 171. At the evidentiary hearing, Mr. Harrison testified he objected every time the prosecutor tried to ask questions about Petitioner being shot or the nature of the incidents. <u>Id</u>. at 186-87. Mr. Harrison attested the trial court sustained his objections and Petitioner never answered the questions of

the prosecutor.  Id. at 187.   As such, Mr. Harrison concluded he did not have any legal basis to move for a mistrial.  Id.   Finally, Mr. Harrison said he did not want a mistrial.  Id.   He believed the trial was going as well as could be expected.  Id.

The trial court denied post-conviction relief finding defense counsel was not ineffective.  Id. at 106.   The court noted that defense counsel not only objected but he was ultimately successful in keeping the evidence from the jury.  Id.   The court also credited Mr. Harrison's testimony, as a seasoned and experienced criminal trial lawyer "who was privy to a great deal of relevant facts unknown to the State," that "a mistrial would not have been a strategically sound decision given that the trial was proceeding so well."[5]  Id.

Upon review, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on Strickland. Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts.   Indeed, the state court was objectively reasonable in its Strickland inquiry.   Applying the look-through presumption described in Wilson, deference is due to the 1st DCA's decision

---

[5] Defense counsel explained his strategic decision not to seek a mistrial.   He said he knew facts that were unknown to the prosecutor, evidence that had not been presented by the state. In particular, defense counsel knew why Petitioner was sitting in his chair and drinking beer with his rifle in his hand prior to the shooting of the victim.   (Doc. 14-8 at 210).

affirming the decision of the trial court in denying post-conviction relief.   As such, ground four is denied.

Alternatively, under the circumstances presented, defense counsel would not have prevailed on a motion for mistrial as evidenced by the decision of the trial court in denying post-conviction relief.   A defense attorney need not make a meritless motion that would not have obtained relief.   <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1056 (11th Cir. 2019).   Failing to satisfy the performance prong of <u>Strickland</u>, Petitioner cannot prevail on his claim of ineffective assistance of counsel as a petitioner must satisfy both prongs of the two-part standard. Therefore, the Petition is due to be denied.

In sub-claim 1E of the Rule 3.850 motion, Petitioner raised a claim of ineffective assistance of counsel "where counsel failed to move for mistrial due to the state's prejudicial questions and comments."   (Doc. 14-7 at 218-19). Petitioner claimed the prosecutor used improper questions to inflame the passions of the jury and create sympathy for the victim.   <u>Id</u>.   For example, the prosecutor asked if the victim looked like a dog and asked if Petitioner ever inquired as to whether the victim lived or died and how Petitioner felt about the victim having to pay a half million dollars on his injuries to his stomach. <u>Id</u>. at 219.   The prosecutor also asked about Petitioner shooting the victim,

who said "I'm unarmed, I have no sidearm," while Petitioner responded, "I'm going to shoot you anyway."  Id.

Petitioner argues the victim never said these statements, and these phrases were uttered by the prosecutor to inflame the prejudices and passions of the jury against Petitioner.  Id. at 220.  Finally, Petitioner referenced the argument of the prosecutor stating Petitioner admitted that he stood by the tree, lined up his rifle, and used the excuse to shoot somebody to shoot the victim and then rack another shell.  Id.  Petitioner urged the trial court to find these comments were highly speculative and prejudicial to Petitioner.  Id.

In his Rule 3.580 motion, Petitioner submitted his counsel was ineffective because he "failed entirely to object to any one of these statements" and failed to move for a mistrial.  Id. at 220-21.  Petitioner also claimed there was resulting prejudice, undermining the confidence in the outcome of the trial.  Id. at 221.

It is not entirely clear Petitioner is attempting to raise the ground presented in sub-claim 1E in his current Petition.  He makes no mention of these alleged instances of misconduct in the Petition.  Assuming arguendo Petitioner is raising the content of sub-claim 1E in his Petition, the claim is due to be denied.

The trial court addressed Petitioner's claim of prosecutorial misconduct after conducting an evidentiary hearing.   (Doc. 14-8 at 106-108).   Trial counsel testified at the evidentiary hearing that he did not find these statements warranted objections and requests for mistrial.   Counsel explained that he is rather conservative in interrupting closing argument and it was part of the defense strategy to let the prosecutor alienate the jury with his aggressive behavior that was "over the top."   Id. at 107.   The trial court recognized the experience of defense counsel and credited his testimony.   Id. at 108.

This Court is not in a position to reassess the credibility determination of the state trial court.   Indeed, this Court must defer to the state court's findings of fact, 28 U.S.C. § 2254(e)(1), including applying deference to the trial court's credibility determination that resolves conflicting testimony.   Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998), cert. denied, 526 U.S. 1047 (1999).   Petitioner has not rebutted this presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

After hearing all of the testimony, the trial court made a credibility determination, essentially finding Mr. Harrison's testimony to be more credible and persuasive.   "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the

state trial court, but not by them.'" <u>Consalvo v. Sec'y for Dep't of Corr.</u>, 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)), <u>cert. denied</u>, 568 U.S. 849 (2012).   Since the trial court observed Mr. Harrison's testimony and found it more credible, this Court will not make a redetermination concerning his credibility.

Finally, Mr. Harrison explained that his conduct was part of his trial strategy, and the reviewing court found this to be "sound trial strategy."   (Doc. 14-8 at 108).   As such, the court found the claim meritless and denied relief. <u>Id</u>.   The 1st DCA affirmed (Doc. 14-10 at 163).

In denying post-conviction relief, the trial court properly applied the two-pronged <u>Strickland</u> standard of review.   Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected this claim based on <u>Strickland</u>.   Further, Petitioner has not shown the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its <u>Strickland</u> inquiry.   Furthermore, the 1st DCA affirmed the decision of the trial court.

The Court finds the state court's determination is consistent with federal precedent.   The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in

Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts. This claim is due to be denied.

In their Response, Respondents assert sub-claim 1F is unexhausted and procedurally defaulted.[6] Response at 9-11. To the extent Petitioner is attempting to raise the claim presented in sub-claim 1F of his Rule 3.850 motion in his federal Petition, the claim is unexhausted and procedurally defaulted. The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7]

---

[6] Sub-claim 1F is a claim of ineffective assistance of counsel for failure to object to the state's misstatements of the record, the improper appeal to the jury's passions, and the improper expression of personal opinion as to the veracity of testimony and Petitioner's guilt. (Doc. 14-7 at 221).

[7] Coleman v. Thompson, 501 U.S. 722 (1991).

> supra, at 747-748, 111 S. Ct. 2546; Sykes,[8] supra, at
> 84-85, 97 S. Ct. 2497. A state court's invocation of a
> procedural rule to deny a prisoner's claims precludes
> federal review of the claims if, among other requisites,
> the state procedural rule is a nonfederal ground
> adequate to support the judgment and the rule is
> firmly established and consistently followed. See, e.g.,
> Walker v. Martin, 562 U.S. ----, ----, 131 S. Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler,
> 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d
> 417 (2009). The doctrine barring procedurally
> defaulted claims from being heard is not without
> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman,
> 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

---

8 Wainwright v. Sykes, 433 U.S. 72 (1977).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750).   To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court.   Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).   If cause is established, a petitioner must demonstrate prejudice.   To demonstrate prejudice, a petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."   Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).   The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.   Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

As noted by the trial court, "[i]n the Defendant's written closing argument, the Defendant conceded that no relief was warranted regarding this

24

ground (sub-claim 1F) because trial counsel's explanation appears 'objectively reasonable.[']"   (Doc. 14-8 at 126).   The court concluded that no further analysis was necessary due to this concession by Petitioner's counsel.   <u>Id</u>. Based on Petitioner's abandonment of the claim raised in sub-claim 1F of his post-conviction motion, the claim is unexhausted and procedurally defaulted. It is clear from state law that any future attempts at exhaustion of this ground would be futile.   As such, Petitioner has procedurally defaulted this ground for relief.   Upon review, he has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the Court does not reach the merits of this ground.

Finally, with regard to ground two of the Petition, the Court concludes Petitioner was not deprived of a fair trial based on prosecutorial misconduct. Although not a model of clarity, ground two of the Petition seems to be based on the claim raised in sub-claim 1D of the post-conviction motion as, in that ground for post-conviction relief, Petitioner claims the prosecutor violated the exclusionary rule when he repeatedly, knowingly, deliberately, and successfully disobeyed previous court holdings during the course of the trial. Apparently, the previous court holdings referenced in this ground are the trial court's rulings on the motions in limine.   As explained by trial counsel, both motions in limine were resolved in Petitioner's favor as the prosecutor agreed

that the evidence at issue was not legitimate Williams Rule evidence and agreed to leave it out of the trial.   When the prosecutor attempted to get this excluded evidence before the jury, defense counsel repeatedly objected and the trial court sustained the objections, keeping the evidence from the jury and admonishing the prosecutor to tread carefully.   As such, Petitioner was not deprived of a fair trial.

Alternatively, to the extent the prosecutor's comments were before the jury, they were not so harmful or inflammatory as to require a new trial. Petitioner is not entitled to habeas relief on ground two.

## VII.   GROUND THREE

 In his third ground for relief, Petitioner raises a claim of ineffective assistance of counsel for failure to inform Petitioner of a favorable plea offer of eight years in prison.   Petition at 25-26.   Petitioner asserts the trial court's decision on this issue "was based on an unreasonable determination of the facts in light of the evidence received at the post-conviction hearing[.]"   Id. at 25 (capitalization omitted).

The record shows, at sentencing, Mr. Harrison addressed an error in the Pre-Sentence Investigation (PSI).   The PSI referenced a state's offer of eight years of probation.   Mr. Harrison, in his attempt to correct the error in the PSI said, "the best plea offer we got in the case was pretrial and it was for eight

years state prison." (Doc. 14-3 at 286-87). The court said the PSI would be corrected to reference prison but "[i]ts a nonaccepted offer to plea bargain the case, so, it's not relevant –" <u>Id</u>. Mr. Harrison responded, "[r]ight."

Mr. Fagan, Petitioner's other attorney at sentencing, asked that the court not give Petitioner a lengthy sentence in a case where the state "offered Mr. Boyington 8 years in Florida State Prison." <u>Id</u>. at 312. The state objected to this statement, and the court sustained the objection. <u>Id</u>.

At the evidentiary hearing on the post-conviction motion, Mr. Harrison explained that the state never made an eight-year plea offer for prison time. (Doc. 14-8 at 176). More specifically, Mr. Harrison referenced the August 3, 2007 correspondence in which the prosecutor said he would consider a plea deal of ten-years in prison with jail credit, which would mean Petitioner should be out in six or seven years. <u>Id</u>. at 178. Mr. Harrison said this was an incorrect estimation on the prosecutor's part because there is an 85 percent law in Florida, so this was "an overstatement by Mr. San Filipo [sic]." <u>Id</u>. Also, this was not a guaranteed offer because the prosecutor did not have the victim's permission to make the offer, so this was merely a proposal that had not yet been accepted by the victim. <u>Id</u>. at 179. Thus, Mr. Harrison stated, there was not a "naked, specific eight-year plea offer[.]" <u>Id</u>. Instead, the last offer by the prosecutor was the ten-year offer, as reflected in the e-mail. <u>Id</u>.

Mr. Harrison testified he discussed this last ten-year offer with Petitioner, and Mr. Harrison explained to Petitioner that jail time would come off and Florida was under the 85 percent law so Petitioner could possibly earn gain time.   Id. at 180.   Mr. Harrison attested that Petitioner was not interested in a plea offer and turned down the state's conditional plea offer of ten years in prison.   Id. at 180-182.   Of import, at the evidentiary hearing, the investigator, Mr. Wayne Nash, testified that although he did not specifically discuss potential plea offers with Petitioner, during their discussions, Petitioner was adamant that he did not commit a crime and was disinterested in resolving the case through a plea.   Id. at 213.

The trial court found Mr. Harrison's testimony credible and his explanation reasonable, concluding there was no "'eight-year' plea offer extended by the state."   Id. at 100.   Alternatively, the trial court, assuming arguendo there had been an eight-year plea offer, credited the testimony of trial counsel and Mr. Nash, that Petitioner "likely would not have accepted it" because Petitioner was adamant that he did not commit a crime and expressed his unwavering opinion that he was not willing to resolve the case by entering a plea to a crime he did not commit.   Id.

As stated previously, as the state court judge observed Mr. Harrison's and Mr. Nash's testimony and found it more credible, this Court will not make

a redetermination concerning their credibility.   The state court's credibility determinations are presumed to be correct, and the presumption has not been rebutted by clear and convincing evidence.

Mr. Harrison's explanation that the state's last offer, a conditional offer of ten years in prison rejected by Petitioner even though it was apparent that he would have been eligible for jail time and possibly gain time, would have resulted in Petitioner serving less than the full ten years in prison (perhaps less than eight years, if reduced by jail time and possible gain time through the 85 percent law) [9] if the conditional offer had been accepted by both the victim and Petitioner.   Defense counsel's explanation certainly constituted a reasonable explanation.   Finally, the written documentation submitted to the Court does not show a state's plea offer of eight years in prison; it shows the state's conditional, "one last final offer" of ten years in prison followed by probation.   (Doc. 14-8 at 65).

The 1st DCA affirmed the decision of the trial court applying the Strickland standard of review and denying Petitioner's claim of ineffective assistance of counsel.   (Doc. 14-10 at 163).   The Court finds the state court's determination is consistent with federal precedent.   Although unexplained,

---

[9] Petitioner received 595 days as credit for time incarcerated in jail (jail time).   (Doc. 14-1 at 231).

the 1st DCA's decision is entitled to AEDPA deference.   Applying the look-through presumption set forth in <u>Wilson</u>, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Ground three is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   As such, the Court finds Petitioner is not entitled to habeas relief on ground three.

## VIII.   GROUND FIVE

Respondents assert ground five is procedurally defaulted.   Response at 12.   This contention is based on Petitioner's concession that he was not entitled to relief on this ground; "[t]he Defendant concedes in his written closing argument that no relief is warranted with regard to this independent claim as it 'appears now without evidentiary support.'"   (Doc. 14-8 at 127). Finding no analysis necessary under these circumstances, the trial court denied relief on the claim Petitioner was denied his Sixth Amendment right to counsel of choice where trial counsel failed to withdraw upon request.   <u>Id</u>. Furthermore, Petitioner abandoned this claim in his appeal of the denial of post-conviction relief.   (Doc. 14-10 at 97-98).   <u>Atwater v. Crosby</u>, 451 F.3d 799, 810 (11th Cir. 2006) (a petitioner abandons a claim when he receives an evidentiary hearing and fails to raise the claim in a brief on appeal), <u>cert.</u>

denied, 549 U.S. 1124 (2007); Baker v. Dep't of Corr., Sec'y, 634 F. App'x 689, 692 (11th Cir. 2015) (per curiam) (same).   Thus, Petitioner failed to give the state courts one full opportunity to resolve the constitutional issue "by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Petitioner cannot show cause and prejudice sufficient to overcome this procedural default.   Furthermore, Petitioner has not shown that a fundamental miscarriage of justice will result if the Court does not address this ground.   Therefore, ground five is due to be denied as unexhausted and procedurally defaulted.

## IX.   GROUND SIX

In his sixth ground for relief, Petitioner claims, "the trial court committed fundamental error by instructing the jury in a way that was inconsistent with the statu[t]e at issue."   Petition at 35 (capitalization omitted).   Petitioner complains the instruction given improperly limited the scope of Petitioner's defense because it added the phrase "*could be avoided only through the use of that force.*"   Id.   Petitioner asserts, standard jury instruction 3.6(f) is at odds with Petitioner's defense, improperly limiting the scope of the defense.   Id.   Petitioner explains this contention:   "[t]he inherent contradictory reasonings supplied by Florida's 'Stand your Ground

31

Statu[t]e' and the jury instructions used in this case deprived Boyington of actual notice.   The statu[t]e makes no mention that Boyington may use deadly force only as an option of last resort, yet the jury instructions pronounce this caveat."   <u>Id</u>. at 36.   Petitioner asserts that reading jury instruction 3.6(f) in the context of the overall charge negated Petitioner's right to use deadly force when deemed appropriate, not as a matter of last resort.   <u>Id</u>.

As noted by Respondents, Response at 14, Petitioner raised a comparable claim on direct appeal in "Issue V: whether the trial court committed fundamental error by instructing the jury in a way that is inconsistent with the 'stand your ground' statute[.]"   (Doc. 14-4 at 403) (capitalization omitted). Petitioner claimed the instruction "directly and adversely affected appellant's defense - that he acted in self-defense at his home[.]"   (Doc. 14-5 at 55).   He referenced the Stand Your Ground statute, allowing one to meet force with force, with no duty to retreat, <u>id</u>. at 56 (citing Fla. Stat. § 776.013(3) (2005), arguing the apparently conflicting instructions given by the court served to confuse the jury, particularly in light of the prosecutor's questions and argument.   <u>Id</u>. at 57.   Petitioner urged the 1st DCA to find the instructions confusing, contradictory, and misleading, depriving Petitioner of a fair trial and due process of law.   <u>Id</u>. at 58.

The state, in its response brief, succinctly summarized Petitioner's contention: "Appellant contends that he is entitled to reversal because the jury instruction on the justifiable use of deadly force was inconsistent with the Stand Your Ground law." Id. at 124.   In contrast to Petitioner's contentions, the state argued the jury instructions were not confusing.   Id. at 124, 127-28. The state first noted that the Stand Your Ground instruction immediately followed the justifiable use of force instruction.   Id. at 127-28.   As such, the state argued, in this context, the language "the danger could be avoided only th[r]ough the use of force" referred to the necessity of force instruction, not the duty to retreat.   Id. at 128.

The 1st DCA affirmed per curiam.   Id. at 153.   Petitioner moved for rehearing, relying on the decision in McWhorter v. State, 971 So. 2d 154 (Fla. 4th DCA 2007) (finding "necessity to avoid" language misleading to the jury as the Stand Your Ground law allows a person to stand his ground and meet force with force, with no duty to avoid or retreat from danger so long as the person is not engaged in an unlawful activity and is located in a place where he has the right to be), which concluded the jury instructions negated the appellant's sole affirmative defense of self-defense, warranting the reversal of the conviction and a remand for a new trial.   (Doc. 14-5 at 158-72).   Comparing the instructions given in McWhorter with those given in Petitioner's case,

Petitioner argued there was no real difference between the instruction "defendant cannot justify the use of force likely to cause great bodily harm unless he used every reasonable means within his power consistent to his own safety to avoid the danger before resorting to that force" and "the danger facing the defendant need not have been actual; however could be avoided only through the use of that force" as they both emphasize the need for the defendant to avoid the danger.   (Doc. 14-5 at 162-63).   Petitioner also referenced the decisions in <u>Pollock v. State</u>, 818 So. 2d 654 (Fla. 3d DCA 2002), <u>Quaggin v. State</u>, 752 So. 2d 19, 26 (Fla. 5th DCA 2000) (per curiam), and <u>Harvey v. State</u>, 448 So. 2d 578 (Fla. 5th DCA 1984), in support of his claim of jury confusion based on the allegedly conflicting instructions conflated by the prosecutor's questions and argument.   (Doc. 14-5 at 163-64).   The 1st DCA denied rehearing.   <u>Id</u>. at 174.

The record shows the trial court charged the jury, in pertinent part:

> A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another or the imminent commission of an aggravated assault against himself or another. However the use of deadly force is not justifiable if you find that Michael Arthur Boyington initially provoked the use of force against himself unless the force asserted toward the defendant was so great that he reasonably believed he was in imminent danger of death or great bodily harm and had exhausted every

reasonable means to escape the danger other than
using deadly force on Arpad Balint and in good faith,
the defendant withdrew from physical contact with
Arpad Balint and clearly indicated to Arpad Balint
that he wanted to withdraw and stop the use of deadly
force, but Arpad Balint continued to resume the use of
force.

In deciding whether the defendant was justified
in the use of deadly force, you must judge him by the
circumstances by which he was surrounded at the time
the force was used.   The danger facing the defendant
need not have been actual, however to justify the use
of deadly force, the appearance of danger must have
been so real that a reasonably cautious and prudent
person under the same circumstances would have
believed that the danger could be avoided only through
the use of that force.   Based upon appearances, the
defendant must have actually believed that the danger
was real.

(Doc. 14-3 at 234-235) (Standard Jury Instruction 3.6(f)).   <u>See</u> generally, 3.6(f)

Justifiable Use of Deadly Force (Doc. 14-1 at 182-84).

The court continued:

If the defendant was not engaged in unlawful
activity and was attacked in a place where he had a
right to be, he had no duty to retreat and had the right
to stand his ground and meet force with force,
including deadly force, if he reasonably believed that
it was necessary to do so to prevent death or great
bodily harm to himself or to prevent the commission of
a forcible felony.

(Doc. 14-3 at 235-36 (Stand Your Ground); (Doc. 14-1 at 184).

35

Upon review, the trial court discussed these instructions at the charge conference and said they would be given.   (Doc. 14-3 at 130-31).   The prosecutor and defense counsel agreed to these instructions.   Id. at 131.

In closing argument, the prosecutor argued:

> Now the defense is going to tell you or argue to you that this was self-defense, that Mr. Boyington was so afraid, so scared for his life that he thought he had no other choice but to shoot Mr. Balint.
>
> And the judge is going to tell you about justifiable use of deadly force.   And what I want you to remember about this it that the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force and based upon appearances, the defendant must have actually believed that the danger was real.
>
> The State's going to ask you to use your common sense here.   Is a man holding a .44 magnum rifle really going to be that afraid of a man holding a bush axe?   I mean let's look at it here.   A bush axe compared to this .44 rifle.   I mean is that reasonable to believe that Mr. Boyington was so afraid and so scared of Mr. Balint 104 feet away.   Twice the distance to the corner of this room, so scared that he thought his only recourse was to shoot him.   Is that reasonable to believe?
>
> The State would submit that it was not.   There was no reason for Mr. Boyington to shoot Mr. Balint but that he had such disregard for Mr. Balint's life.

Id. at 201-202.   In conclusion, the prosecutor argued, "[t]his was not self-defense.   This was not justifiable use of deadly force[;] this was not excusable use of force."   Id. at 206.

In his closing argument, Mr. Harrison countered the state's argument by explaining that in Florida, there is a Stand Your Ground law ("'a person who is on their own property, on their own property, doesn't have to retreat.   If somebody is out there threatening the individual or making a person think that he's in danger, the property owner has no obligation to retreat.   He does not have to run into that house").   Id. at 220.   Of import, right after closing arguments, the court was going to instruct the jury on the Stand Your Ground law.

The prosecutor in his final closing argument went back to his earlier argument concerning the justifiable use of force, asserting "the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force."   Id. at 224.   The prosecutor said, based upon appearances, Petitioner "must have actually believed that the danger was real."   Id.   The prosecutor urged the jury to conclude Petitioner's actions were not justifiable, excusable, or taken in self-defense.   Id. at 225-26.

Respondents, in their Response at 47-48, rely on the holding in <u>State v.</u>
<u>Floyd</u>, 186 So. 3d 1013, 2019-20 (Fla. 2016), which refers to the 2010 law
concerning justifiable use of force:

> In Florida, the laws concerning justifiable use of
> force are mostly codified in Chapter 776 of the Florida
> Statutes.2 Section 776.012, "Use of force in defense of
> person," discusses the use of force, both deadly and
> non-deadly, in defense of person:
>
> A person is justified in using force, except deadly force,
> against another when and to the extent that the
> person reasonably believes that such conduct is
> necessary to defend himself or herself or another
> against the other's imminent use of unlawful force.
> However, a person is justified in the use of deadly force
> and does not have a duty to retreat if:
>
> (1) He or she reasonably believes that such force is
> necessary to prevent imminent death or great bodily
> harm to himself or herself or another or to prevent the
> imminent commission of a forcible felony; or
>
> (2) Under those circumstances permitted pursuant to
> s. 776.013.
>
> § 776.012, Fla. Stat. (2010) (emphasis supplied).
>
> Next, section 776.013, "Home protection; use of
> deadly force; presumption of fear of death or great
> bodily harm," contains what is commonly known as
> the "Stand Your Ground" law:
>
> A person who is not engaged in an unlawful activity
> and who is attacked in any other place where he or she
> has a right to be has no duty to retreat and has the
> right to stand his or her ground and meet force with

> force, including deadly force if he or she reasonably
> believes it is necessary to do so to prevent death or
> great bodily harm to himself or herself or another or to
> prevent the commission of a forcible felony.

§ 776.013(3), Fla. Stat. (2010).

The Florida Supreme Court found these instructions "correctly guide the jury," Floyd, 186 So. 3d at 1022, "correctly stated the law" and were "not confusing, misleading, or contradictory with regard to the duty to retreat where there is a question of fact as to who was the initial aggressor."   Id. at 1023.

In Montgomery v. Sec'y, Dep't of Corr., No. 3:18-cv-227-J-39PDB, 2020 WL 1820508, at *4 (M.D. Fla. Apr. 10, 2020), this Court, when addressing a similar claim to that of Petitioner's, noted the state's response that the trial court adequately instructed the jury on the stand your ground law while giving the broader, standard instructions as well, properly instructing the jury that Petitioner was relieved of the duty to retreat in particular circumstances. This Court found:

> The federal habeas corpus court will be bound by
> the Florida court's interpretation of its own laws
> unless that interpretation breaches a federal
> constitutional mandate. McCoy v. Newsome, 953 F.2d
> 1252, 1264 (11th Cir. 1992) (per curiam), cert. denied,
> 504 U.S. 944, 112 S. Ct. 2283, 119 L.Ed.2d 208 (1992).
> Since this ground presents an issue that is not
> cognizable in this habeas proceeding, it cannot provide
> a basis for federal habeas corpus relief. Furthermore,
> there is no breach of a federal constitution mandate

and Petitioner is not entitled to federal habeas relief
on ground two.

Montgomery, 2020 WL 1820508, at *5–6.    See Floyd v. Fla. Dep't of Corr., No.
3:15cv361-MCR/CAS, 2017 WL 4229054, at *9 (N.D. Fla. July 7, 2017) (not
reported in F. Supp.) (finding jury instructions, including justifiable use of
deadly force and Stand Your Ground, accurately reflect Florida law and did not
shift the jury's attention from the issues to be decided under the law and
counsel was not ineffective for failure to object to the giving of the instruction
in its entirety or to the organization of the instruction), report and
recommendation adopted by 2017 WL 4226141 (N.D. Fla. Sept. 22, 2017); see
also Abrams v. Jones, No. 17-CIV-80540-MARRA, 2018 WL 8808232, at *13
(S.D. Fla. July 13, 1018) (not reported in F. Supp.) (finding petitioner failed to
satisfy the Strickland standard as the errant comma in the instruction did not
constitute fundamental error as the defendant's sole defense was the
justifiable use of deadly force and any objection would have been meritless).

Respondents also rely on Verne v. Jones, No. 3:15cv001-LC/CAS, 2017
WL 1190386, at *11 (N.D. Fla. Mar. 10, 2017) (not reported in F. Supp.), report
and recommendation adopted by 2017 WL 1196440 (N.D. Fla. Mar. 29, 2017),
for the proposition that the instructions correctly state the law, including the
right to stand your ground and meet force with force.    Response at 48.    In

<u>Verne</u>, the federal district court recognized the complexity of these instructions, noting that for Stand Your Ground alone, the jury is required to make four factual findings: (1) was the defendant not engaged in unlawful activity; (2) was the defendant attacked; (3) was he somewhere he had a right to be; and (4) did he reasonably believe it was necessary to use force.   <u>Id</u>.   In <u>Verne</u>, like in Petitioner's case, the trial court instructed the jury on the "initial aggressor exception," asking if the defendant initially provoked the use of force against himself.   <u>Id</u>.   <u>See</u> (Doc. 14-1 at 183).   If the jury finds the defendant provoked the use of force against himself, there are other questions raised which the jury must address:   "whether he reasonably believed that the provoked force threatened him with danger of death or great bodily harm; (2) whether he reasonably believed that the threatened danger was imminent; and (3) whether he exhausted every reasonable means to escape before using force to defend himself against the provoked force."   <u>Verne</u>, 2017 WL 1190386, at *11.

After reviewing the instructions given in <u>Verne</u>, the federal district court found the instructions did not render the entire trial fundamentally unfair in violation of the defendant's due process rights.   In reaching this conclusion, the court explained:   "[t]he jury was instructed that under certain circumstances, Petitioner had no duty to retreat.   It was the jury's role to

determine if those circumstances were met.  Petitioner has not shown that any error in jury instruction 'so infected the entire trial' that his conviction is a violation of due process."  <u>Verne</u>, 2017 WL 1190386, at *12.

The constitutional question before this Court is whether the challenged instructions, viewed in the context of the entire charge to the jury and the trial record, infected Petitioner's trial such that his conviction violated due process principles.  <u>Jamerson v. Sec'y for Dep't of Corr.</u>, 410 F.3d 682, 688 (11th Cir. 2005).   Notably, as there was no objection to the instructions at trial, the state court's review was limited to fundamental error.

This Court must ask whether the jury was precluded from considering Petitioner's defense of self-defense due to an erroneous instruction.  In this instance, there was no erroneous instruction.  Like in <u>Verne</u>, the jury was instructed that under given circumstances, Petitioner had no duty to retreat, and although there is complexity to the instructions, it was the jury's role to apply those instructions and determine if those particular circumstances were met.

To the extent there was any error in the jury instruction, it did not so infect the entire trial to result in a violation of due process.  There was not error so critical that it rendered the entire proceeding fundamentally unfair. As such, Petitioner is not entitled to habeas relief.

Alternatively, the 1st DCA's decision denying Petitioner's claim on direct appeal is entitled to AEDPA deference. (Doc. 14-5 at 153). The 1st DCA's decision affirming the trial court is not contrary to, nor an unreasonable application of controlling United States Supreme Court precedent. As Petitioner has not demonstrated that the adjudication of the state court was contrary to or an unreasonable application of any clearly established federal law as determined by the United States Supreme court or an unreasonable determination of the facts, Petitioner is not entitled to habeas relief on this ground.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Petition for Writ of Habeas Corpus (Doc. 1), **the Court denies a certificate of appealability**. [10]

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880,

Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of February, 2021.

BRIAN J. DAVIS
United States District Judge

sa 2/22
c:
Counsel of Record

893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.